The Chief Justice delivered the opinion of the court.
The certiorari issued in this case, brings before us an order made by two justices of the peace of the county of *83 Essex, for the discharge of John Taylor, an apprentice, from Lawrence Ackerman, his master, and an order of the Court of General Quarter Sessions of the Peace of that county, made on appeal, confirming-the order of discharge.
One of the exceptions takon by the counsel of the plaintiff in certiorari is, that the complaint to the justice, a 'he inception of the proceedings, was not made by the apprentice. The fact is verified by the proceedings returned with the writ. On the application to the justice he issued a summons to the master to appear before him “ to answer to a charge lodged against him for ill-treating his apprentice by the; name of Jolin Taylor; complaint made by the father, Andrew Taylor.”
The act “respecting apprentices and servants,” Rev. Laws, 366, which is the foundation of the authority and jurisdiction of the justices, and of the sessions, in cases of this nature, directs “ that if any master or mistress shall be guilty of “any misusa.ge,” &c., “so that his or her clerk, apprentice or servant, shall have any just cause to complain, or if the said clerk, apprentice or servant, shall absent himself,” etc., “or be guilty of any misdemeanor,” &c., “then the said master or mistress, or the said clerk, apprentice or servant, being aggrieved and having just cause of complaint, shall repair to one justice of the peace withiu the county where the said master or mistress dwells, who shall in his *wisdom take such order and direction between such [*66 master or mistress and his or her clerk, apprentice or servant, as the equity of the case shall require.” If the justice cannot compound or agree the matter, he is to call to his assistance two other justices, who, constituting a court for the hearing of the matters in difference, may if they think proper, discharge the apprentice, or cause due correction to bo administered to him subject to an appeal to the next Court of General Quarter Sessions of the Peace of the county.
By the terms of this act, it is obvious the complaint to the justice must be made by the master or the apprentice. Ko *84 other person is authorized to interfere. The justice cannot, proceeding under this statute, listen to or act upon the complaint of any other. The policy of this limitation might, if necessary, be readily sustained. The relation of master and apprentice, resembling in some degree that of parent and child, is interesting and delicate, and should not be subject to interruption or disturbance by even well meant interference of others. Erom the genius and spirit of our people and institutions, apprentices seldom find just cause of complaint ; and if they do, they will not hesitate to make them known and promptly to receive adequate redress. It is not required of us, however, to defend the policy of the law. It is enough that the wisdom of the legislature has prescribed a rule, has not authorized the justice to summon the master to answer a charge lodged or a complaint made even by a father, but has directed that the apprentice, if aggrieved, and having just cause of complaint, shall himself repair to the justice.
A complaint then from the master or apprentice is the very foundation of the authority of the justice. Without it, he has no legal power to move. Such complaint is indispensable to confer on him jurisdiction. All the-subsequent proceedings are dependent each on the other; and a complaint made by a person permitted by law to complain must appear to sustain the whole. Without such complaint, if such complaint does not appear, or if it appear to have been made by a wrong person, the proceedings are vicious and defective ab origine. This principle has been repeatedly adjudged. In the case of The King v. Wootton Rivers, or Wootton Rivers v. Marlborough, reported in Carthew 365, Comberback 354, 5 Mod. 149, and 2 Salk. 492, an order of two justices for the removal of a pauper, reciting that it ■was upon complaint made to them, but omitting to set forth that the complaint was made by the church wardens *67] *and overseers of the poor, having been affirmed in the sessions, was in the court of King’s Bench quashed for the *85 omission. The court said “ It is absolutely necessary that in the body of the order it should be expressly shown that it was made on the complaint of the church wardens and overseers of the poor, for otherwise the justices had no authority to make tlie order or remove the pauper.” The language of the English statute respecting removals is, “ it shall be lawful, upon complaint made by the church wardens or overseers of the poor of any parish, (fee., for any two justices, &c., by their warrant to remove.” 13 and 14 Car. 2 ch. 12. In the case of The King v. Hulcott, 6 D. and E. 583, an order was made by a justice of the peace on the statute 5 Eliz. ch. 4, at the instance of a master to discharge a servant hired for a year, who had become insane before the year expired. On appeal the sessions confirmed the order. The j ustice had j urisdiction to make an order of discharge only where the servant was a servant in husbandry, and it was not stated in the order that the servant discharged was such servant. The court of King’s Bench on certiorari quashed the order because it did not appear on the face of it that the justice had jurisdiction, and the servant was therefore not legally discharged. In Finley v. Jowle, 12 East. 248, upon the statute 20 Geo. 2 ch. 19, for the regulation of certain apprentices and servants, which enacts that it shall be lawful for two or more justices of the peace, “ upon application or complaint made upon oath by any master or mistress against any such apprentice, touching any misdemeanor, (fee., in such service,” to hear and determine the same and punish or discharge the apprentice, the court of King’s Bench held that the application or complaint must be made by the master or mistress, and it must be verified on oath, but it need not be on the oath of the master or mistress who may know nothing of the facts themselves.
The auswer given to this objection in the brief furnished us by the defendant's counsel is, that it is matter of form only. But this answer is not sound. The objection is the want of a material fact. Moreover, matters touching juris *86 diction, if sustainable, are always of substance, not of form. In The King v. Hareby, Andrews, 361, on a motion to quash an order of removal because there was no complaint set out therein, it was answered that it is only matter of form. But by the court. “This is the foundation of the jurisdiction of *68] the justices,” and therefore they quashed the order. *In The King v. Bedmin, 2 Strange 1158, an order of removal was made without saying it was on the complaint of the church wardens and overseers. On appeal the sessions set all .this right under the statute 5 Geo., which authorizes them to amend defects of form. But the court of King’s Bench said, “ This is going too far. It was never designed they should insert new facts, but only amend the informal way of setting out the facts which were stated.” And the orders wmre quashed.
In the brief of the defendant’s counsel it is .further said, that the regularity or irregularity of the proceedings before the justices is matter of form only, and especially as it has been decided that the Quarter Sessions has original jurisdiction. Thence, I presume, it was intended to infer, that as they have original jurisdiction to discharge, their order is sustainable on the ground of their own independent jurisdiction, although the antecedent proceeding of the justice or justices should be erroneous or defective. Let us examine this matter briefly, in order that the apparent propriety and application of the inference may be removed, and that the W'eight due in the investigation of the subject to the English cases may be justly appreciated. It is true that in England the Quarter Sessions has original jurisdiction to discharge apprentices. The King v. Gill, 1 Str. 143; The King v. Davie, 1 Str. 704; and in The King v. Johnson, 2 Salk. 491, it was held that an original order to discharge an apprentice might be made in the sessions without any previous application to a justice of the peace to endeavor to compromise the matter. The rule is considered to be so settled because many original orders of sessions had been *87 confirmed in the King’s Bench, although strong doubts are expressed of the propriety of the rule. In 1 Burns Just. 76, it is said : The sessions arc not to take the matter by appeal. Now the course of proceeding and the jurisdiction of the Quarter Sessions under our statute are wholly different. The only jurisdiction of that court here is upon appeal. 'They have no original jurisdiction to discharge an apprentice. Hence in England the inference may bo just, that the order of the sessions may be correct although the proceedings before the justice wore defective. But not so with us. The order of the sessions, which is in affirmance of the proceedings brought before them by appeal, must necessarily be erroneous if those previous proceedings arc essentially defective.
I am of opinion, therefore, that the orders should he quashed because *the inferior tribunals have exceeded [*69 the hounds of their jurisdiction. They had jurisdiction only on complaint made by master or apprentice, and they have proceeded and made the orders in question, without such original complaint.
The ground on which our decision is made avoids the objections of the counsel of the defendant to the writ of certiorari. He admits in his brief that “where the inferior court has exceeded its jurisdiction, or has exercised a jurisdiction over matters not given to it by statute, there are a few instances where a certiorari has been granted.” Now if we are right in our views of the subject, the inferior tribunals have “ exceeded their jurisdiction,” and have exercised a jurisdiction over matters not given to them by statute.” The general superintending power of this court over the proceedings of inferior tribunals, especially of such as are created by statute, and possess special powers only, and exercise a limited jurisdiction, is unquestionable. If their proceedings are declared by the legislature to be final and conclusive, we shall not enquire whether they have justly and properly exercised the powers confided to them, *88 but we are bound to take care that they do not exercise powers which they do not legitimately possess. In the language of the Court of King’s Bench, in the case of The King v. The Inhabitants of Glamorganshire, 1 Ld. Raym. 580, "This court will examine the proceedings of all jurisdictions erected by act of parliament; and if they, under pretence of such act, proceed to encroach jurisdiction to themselves greater than the act warrants, this court will send a certiorari to them to have their proceedings returned here; to the end that this court may see that they keep themselves within their jurisdiction, and if they exceed it to restrain them.” The powers heretofore confided to this court may unquestionably be abridged or taken away by the authority of the legislature. This effect however has not been produced; nor was it intended by the tenth section of the act respecting apprentices and servants. We may not indeed intermeddle with proceedings had “in pursuance of” that act. But we are not thereby prohibited from enquiring whether the proceedings have been in pursuance of the act, whether under the supposed authority of that act an excess of jurisdiction has not occurred. Such was the opinion of this court in Vunch v. Whorl, Pen. 336. In The King v. The Justices of the West Riding of Yorkshire 193 Doug., a, certiorari was applied for, to remove certain orders made at *70] a *0ourt of Quarter Sessions on an appeal against the allowance of the accounts of the surveyors of highways, under the statute 13 Geo. 3. It was objected, that by the express terms of the eightieth section no certiorari can issue to remove any proceeding to be had or taken in pursuance of the act. It was answered that if the Quarter Sessions exceeded their jurisdiction in receiving this appeal, the certiorari might issue, because the proceeding is not in pursuance of the act, but in derogation of it: — and the certiorari was allowed. In The King v. Reeve and others, 1 Bl. Rep. 231, on a motion for a certiorari to remove convictions on the statute against conventicles and the proceedings on an *89 appeal to the sessions according to the statute, winch enacts “ that no other court whatsoever shall intermeddle with any cause or causes of appeal upon this act, but they shall be finally determined in the Quarter Sessions only.” 2 Burr. 1041, Lord Mansfield, in delivering the opinion of the court, said, “ There is no color that these negative words should take away the jurisdiction of this court to issue writs of certiorari. This court hath an inherent power to issue certiorari in order to keep all inferior courts within due bounds, unless expressly forbid so to do by the words of the law.”
Orders quashed.